UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ANA GONCALVES,

      Plaintiff,

   v.

CHARTER SCHOOLS USA at
GATEWAY, L.C.,

      Defendant,

_____/

Case No. 2:24-CV-712-KCD-NPM

## **ORDER**

Plaintiff Ana Goncalves is disabled and worked as a teacher for Defendant Charter Schools USA at Gateway, L.C. She claims another teacher there sexually harassed her daily, and his conduct persisted even after she reported it to the school's principal. This caused her increased stress, seizures, and ultimately required a leave of absence. When she did not return to work after her leave ended, she was fired.

Goncalves now sues Charter Schools under Title VII of the Civil Rights Act of 1964, the Florida Civil Rights Act, and common-law negligence. Charter Schools seeks summary judgment (Doc. 50)[1], and Goncalves has responded (Doc. 61), making this matter ripe. As explained below, only Goncalves's Title

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

VII and FCRA-retaliation claims live on. Charter Schools is entitled to summary judgment on the rest. Its motion is thus **GRANTED in part** and **DENIED in part**.

## I. Background

Here are the relevant facts, taken in the light most favorable to Goncalves.[2] Goncalves taught at Charter Schools in a classroom "down the hall" from another teacher, Francisco Maldonado. (Doc. 50-1 at 9, 12.)[3] She saw Maldonado daily and interacted with him at weekly team meetings. (*Id*.) Goncalves claims that "within a few short months," Maldonado started making sexually charged comments around her "every day." (*Id*. at 13-14, 16.)

She recalls several specific comments. Maldonado made a habit of openly appraising his female colleagues: he remarked that he "loved the rack" of one teacher and noted the size of another's "ass." (*Id*. at 14.) And he did not stop there. He told her that if another female teacher "wasn't such a bitch, [he] probably would have already fucked her." (*Id*. at 14-15.) For good measure, he

---

[2] The Court "recite[s] the profane language . . . allegedly [used in] this workplace exactly as it was spoken in order to present and properly examine the social context in which it arose. [It] do[es] not explicate this vulgar language lightly, but only because its full consideration is essential to measure whether these words and this conduct could be read as having created an environment that a reasonable person would find hostile or abusive." *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 803 (11th Cir. 2010).

[3] For ease of reference, the Court cites the page numbers generated by its electronic filing system.

boasted that, but for his girlfriend working alongside them, "there would be more rumors about him fucking other teachers." (*Id.*)

Other comments focused on Goncalves directly. Maldonado offered to "show [her] something pink later" and critiqued her wardrobe, telling her that "loose pants didn't flatter [her] body features." (*Id.* at 15-16.) Or take a scene that played out in front of other teachers. Maldonado told Goncalves he would have opened a door for her sooner had she "flashed" him and "show[n] [him her] boobs." (*Id.* at 15.) And these were no isolated incidents. By Goncalves's account, these remarks represent exactly what she had to endure from Maldonado, day in and day out, for nearly five months. (*Id.* at 9, 15.)

Goncalves eventually reported the conduct and disclosed some of these comments to the school's principal, Dr. Angela Carter. (*Id.* at 19-20.) She also explained that she experienced psychogenic nonepileptic seizures, and Maldonado's behavior was causing her "to have [seizure-related] episodes." (*Id.* at 20.)

Carter afterwards met with Maldonado. (Doc. 50-10 at 25.) He was informed "that a teacher ha[d] concerns" and verbally warned that "he needed to just be mindful of his comments." (*Id.* at 25-26, 30.) Maldonado understood this as referencing his flirtatious relationship with an entirely different female teacher and consequently stopped flirting with her. (*Id.* at 26, Doc. 50-12 at 2, Docs. 50-12 at 2, 50-14). But he kept harassing Goncalves. (Docs. 50-1 at 22.)

3

All this exacerbated Goncalves's seizures and led her to take a leave of absence. (*Id.* at 23-27.) She did not return to work after her leave expired and ultimately was advised she had been fired for job abandonment. (*Id.* at 34.) Goncalves now sues Charter Schools for various forms of discrimination and negligence.

## II. Legal Standard

Summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Smothers v. Childers*, 159 F.4th 922, 930 (11th Cir. 2025). "When deciding a motion for summary judgment, a judge is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Las Brisas Condo. Homes Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:21-CV-41-KCD, 2023 WL 8978168, at *1 (M.D. Fla. Dec. 28, 2023). A genuine issue exists if a reasonable jury could return a verdict for the nonmoving party. *See, e.g.*, *Martinez v. GEICO Cas. Ins. Co.*, 152 F.4th 1323, 1330 (11th Cir. 2025). "And a fact is material if it might affect the outcome of the suit under the governing law[.]" *Gervin v. Florence*, 139 F.4th 1236, 1245 (11th Cir. 2025).

The moving party "bears the initial burden to demonstrate the basis for its motion, and must identify the portions of the record which it believes demonstrates the absence of a genuine issue of material fact." *Hornsby-*

*Culpepper v. Ware*, 906 F.3d 1302, 1311 (11th Cir. 2018). "The burden then shifts to the non-moving party to rebut that showing by producing affidavits or other relevant and admissible evidence beyond the pleadings." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012). In reviewing the evidence, the court draws all reasonable inferences in the nonmoving party's favor. *See Sconiers v. Lockhart*, 946 F.3d 1256, 1263 (11th Cir. 2020).

### III. Discussion

Goncalves throws a lot at the wall here. By her account, she endured a hostile work environment, alongside discrimination based on disability, sex, and retaliation. And to cap it all off, she adds a claim that Charter Schools acted negligently.

Charter Schools insists summary judgment should be entered across the board. The Court agrees, with two exceptions. First, Goncalves's Title VII hostile work environment claim must go to a jury. Genuine issues exist about just how pervasive the harassment was, and whether the school's response was reasonable. Second, her FCRA-retaliation claim survives since Charter Schools does not meaningfully challenge it. Though Charter Schools broadly contends this claim fails, its argument is not developed enough for the Court to act.

The remaining claims fail though. Goncalves's other FCRA theories lack evidence showing she was discriminatorily fired. And her negligence claims are barred as a matter of law. For organizational purposes, the Court separates its

analysis into three sections: the Title VII claim, the FCRA discrimination claims, and the negligence claims.

### A. The Title VII Claim

Title VII bars private employers from "discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privilege of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "The discriminat[ion] prohibited by Title VII includes the creation of a hostile work environment." *Short v. Immokalee Water & Sewer Dist.*, 165 F. Supp. 3d 1129, 1141 (M.D. Fla. 2016). This type of claim has five elements: (1) plaintiff "belongs to a protected group"; (2) she was "subject to unwelcome harassment"; (3) "the harassment was based on a protected characteristic"; (4) "the harassment was sufficiently severe or pervasive to alter the conditions of his employment;" and (5) her "employer was responsible for the hostile work environment." *Copeland v. Georgia Dep't of Corr.*, 97 F.4th 766, 774 (11th Cir. 2024).

Only the last two elements are at issue here. Charter Schools insists that Maldonado's alleged conduct was neither severe nor pervasive. And even if it was, the school argues the *Faragher-Ellerth* defense relieves it of responsibility. Neither argument holds water.

### i. The Severe-or-Pervasive Element

"Either severity or pervasiveness is sufficient to establish a violation of Title VII." *Reeves*, 594 F.3d at 808. This inquiry requires that the employee "subjectively perceive the harassment as sufficiently severe and pervasive," and that perception must "be objectively reasonable." *Yelling v. St. Vincent's Health Sys.*, 82 F.4th 1329, 1335 (11th Cir. 2023). Charter Schools does not doubt the subjective half of the equation. It instead contends that Maldonado's conduct objectively falls short.

Objective severity and pervasiveness is "judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Id*. Courts consider "(1) the frequency of the conduct, (2) its severity, (3) whether it was physically threatening or humiliating, or a mere offensive utterance, and (4) whether it unreasonably interfered with the employee's job performance." *Harris v. Pub. Health Tr. of Miami-Dade Cnty.*, 82 F.4th 1296, 1302 (11th Cir. 2023). No one factor is determinative and this inquiry "is not subject to mathematical precision." *Melton v. I-10 Truck Ctr. Inc*, No. 23-14175, 2026 WL 319183, at *7 (11th Cir. Feb. 6, 2026); *see also Jones*, 683 F.3d at 1299.

On balance, these factors favor Goncalves. Her deposition testimony recalls Maldanado made sexualized comments daily for roughly five months. Such frequency is "an important marker of pervasiveness." *Allen v. Ambu-Stat,*

*LLC*, 799 F. App'x 703, 709 (11th Cir. 2020); *see also Copeland*, 97 F.4th at 777 (finding frequency factor favored plaintiff where harassment happened "on a daily basis"); *Thornton v. Flavor House Prods., Inc.*, No. 1:07-CV-712-WKW, 2008 WL 5328492, at *9 (M.D. Ala. Dec. 19, 2008) ("Conduct that occurs every day weighs the frequency factor in the employee's favor."). And while some of the comments were not directed at Goncalves, it is enough that they were made in her presence. *See Reeves*, 594 F.3d at 811 ("Evidence that co-workers aimed their insults at a protected group may give rise to the inference of an intent to discriminate on the basis of sex, even when those insults are not directed at the individual employee."); *Hudson v. Norfolk S. Ry. Co.*, 209 F. Supp. 2d 1301, 1326 (N.D. Ga. 2001) ("It is not fatal to Plaintiff's claim that most of the remarks attributed to Herren were not targeted at her. A plaintiff may have a viable hostile work environment claim under Title VII even if the remarks were not directed at her.").

As for severity, the Eleventh Circuit has set a high bar. "Severe" conduct typically involves verbal harassment combined with unwanted physical contacts. *See Olson v. Lowe's Home Centers Inc.*, 130 F. App'x 380, 388 (11th Cir. 2005) (harasser made explicitly sexual comments and rubbed his entire body" against plaintiff "on two occasions"); *Hulsey v. Pride Restaurants, LLC*, 367 F.3d 1238, 1248 (11th Cir.2004) (direct and indirect propositions for sex made along with "repeated attempts to touch [plaintiff's] breasts, place his

8

hands down her pants, and pull off her pants*"); Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 506 (11th Cir. 2000) (sexualized comments along with unwanted massages and harasser "rubb[ing] his body parts against [plaintiff]"). And even then, the physical contact usually needs to be especially aggressive. *See Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1247, 1250 (11th Cir. 1999) (concluding that statements and "one slight touching" fell "well short" of the severity standard"); *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 579 (11th Cir. 2000) (complimentary statements along with quick touching of plaintiff's inside thigh and other instances of touching plaintiff's bracelet and ring insufficiently severe); *Guthrie v. Waffle House, Inc.*, 460 F. App'x 803, 807-08 (11th Cir. 2012) (verbal harassment made in tandem with harasser grabbing plaintiff's butt "two to five times" held insufficiently severe).

This case has none of that. Goncalves never alleges Maldonado (or anyone) touched her. So while Maldonado's alleged conduct is clearly inappropriate and offensive, it does not quite reach the severity standard bore out by existing caselaw. *Henderson v. Waffle House, Inc.*, 238 F. App'x 499, 502 (11th Cir. 2007) (sexually-natured comments and pulling plaintiff's hair held insufficiently severe).

Still, the conduct was sufficiently humiliating and impacted Goncalves's job performance. "[H]arassment that occurs in the presence of coworkers is especially humiliating." *Copeland*, 97 F.4th at 779. Maldonado allegedly

9

expressed interest in seeing Goncalves's breasts while other teachers stood by. And he even complimented her appearance while students were around. What is more, this conduct allegedly aggravated Goncalves's medical condition, causing her to experience seizures and rendering her unable to work. So it's safe to say that, under to the existing record, Maldonado's harassment unreasonably interfered with Goncalves's job performance. *See E.E.O.C. v. SDI Athens E., LLC*, 690 F. Supp. 2d 1370, 1380 (M.D. Ga. 2010) (finding sufficient evidence of unreasonable interference with job performance where harasser's conduct caused plaintiff "stress and eventually compelled her to quit her job").

Taken together, a reasonable jury could find the conduct here sufficiently pervasive. Goncalves's testimony paints Maldonado as a serial sexual harasser who could not go a day without giving her inappropriate attention. His comments were objectively embarrassing and caused Goncalves's work to suffer. Accepting Goncalves's testimony, as the Court must, she tells a story of nonstop sexual harassment pervasive enough to sustain a Title VII claim. A genuine issue of material fact thus exists on this point.

### ii. The *Faragher-Ellerth* Defense

Charter Schools has a fallback argument. Even if Maldonado's conduct crossed the Title VII line, the *Faragher-Ellerth* defense shields it from liability. "An employer avoids liability under this defense if: (1) it exercised reasonable care to prevent and correct promptly any sexually harassing behavior; and (2)

the employee unreasonably failed to take advantage of any preventative or corrective opportunities [it] provided." *Baldwin v. Blue Cross/Blue Shield of Alabama*, 480 F.3d 1287, 1303 (11th Cir. 2007). "Both elements must be satisfied for the defendant-employer to avoid liability, and the defendant bears the burden of proof on both elements." *Frederick v. Sprint/United Mgmt. Co.*, 246 F.3d 1305, 1313 (11th Cir. 2001).

As an initial matter, Charter Schools claims Goncalves never told Principal Carter that she was being *sexually* harassed by Maldonado. But Goncalves says she did. Her deposition testimony shows that she disclosed some of Maldonado's specific comments to Carter and explained her discomfort. Though Carter remembers things differently, this is the type of factual dispute deserving of a trial, not summary judgment. *See, e.g.*, *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) ("Where the non-movant presents direct evidence that, if believed by the jury, would be sufficient to win at trial, summary judgment is not appropriate even where the movant presents conflicting evidence.").

Charter Schools then pivots, claiming its written policy prohibiting sexual harassment alone satisfies the defense. That *can* be true—but only where it is undisputed that the employee did not properly report the harassment. *See Joyner v. Woodspring Hotels Prop. Mgmt. LLC*, 785 F. App'x 771, 773 (11th Cir. 2019); *Cooper v. CLP Corp.*, 679 F. App'x 851, 854 (11th Cir.

11

2017); *Fodor v. E. Shipbuilding Grp.*, 598 F. App'x 693, 695 (11th Cir. 2015).

Again, Goncalves testified that she reported Maldonado's conduct. So Charter

Schools has to show not just that it tried to prevent such harassment, but also

that it took appropriate steps to *correct* it. *See Frederick*, 246 F.3d at 1314 ("The

first element of the *Faragher/Ellerth* affirmative defense requires that an

employer demonstrate that it took reasonable care both to prevent and correct

harassment."); *Swindle v. Jefferson Cnty. Comm'n*, 593 F. App'x 919, 923 (11th

Cir. 2014) (observing that an employer's "formal anti-harassment policy . . .

does not automatically satisfy [its burden]" to show it corrected reported

harassment); *Reyna v. ConAgra Foods, Inc.*, 506 F. Supp. 2d 1363, 1375 (M.D.

Ga. 2007) ("[W]hile proof that an employer has promulgated an anti-

harassment policy with a complaint procedure is relevant in determining

whether an employer may escape liability, the mere existence of a policy alone

is not sufficient. ConAgra must also show that it acted in a reasonably prompt

manner in responding to Plaintiffs' complaints.").

All that aside, Charter Schools insists Principal Carter's verbal warning

to Maldonado constituted reasonable corrective action. Corrective measures

are judged by whether they are "reasonably likely to prevent the misconduct

from recurring." *Baldwin*, 480 F.3d at 1305; *see also Wilcox v. Corr. Corp. of

Am.*, 892 F.3d 1283, 1288 (11th Cir. 2018). "What is appropriate remedial

action will necessarily depend on the particular facts of the case—the severity

12

and persistence of the harassment, and the effectiveness of any initial steps." *Moore v. Shands Jacksonville Med. Ctr., Inc.*, No. 3:09-CV-298-J-34TEM, 2013 WL 11327135, at *14 (M.D. Fla. Oct. 18, 2013). "If the steps taken by the employer are not reasonably calculated to halt the harassment, the steps taken by the employer are not adequate." *Kurtts v. Chiropractic Strategies Grp., Inc.*, 481 F. App'x 462, 468 (11th Cir. 2012).

It is questionable whether the verbal warning here sufficed. Maldonado was told merely to be "mindful of his comments." (Doc. 50-10 at 30.) He was never informed that Goncalves had complained about him. And he understood the warning as referencing his flirtatious relationship with an entirely different colleague. What is more, Goncalves maintains that Maldonado continued harassing her even after the warning. Against this factual backdrop, a jury could find that Charter Schools failed to take reasonable corrective action. *See Strozier v. Maddox*, No. 1:22-CV-03342-TRJ, 2025 WL 2808925, at *5 (N.D. Ga. Sept. 26, 2025) ("Where there is evidence that an employer's response is reasonable, and counter-evidence that it is unreasonable, that presents a question of fact for the jury."); *Hollis v. Town of Mount Vernon*, No. CIV.A. 12-00193-CG-N, 2013 WL 3878947, at *9 (S.D. Ala. July 26, 2013) (concluding that a jury could find defendant liable where it disciplined harasser for action that "had nothing to do with his harassment of [plaintiff and which] did not remedy the problem"). "Since genuine issues of material

13

fact exist as to whether Defendants reasonably acted to prevent and correct the harassment, it is not necessary to address the second prong of the affirmative defense." *SDI Athens E., LLC*, 690 F. Supp. 2d at 1382; *see also Quillen v. Am. Tobacco Co.*, 874 F. Supp. 1285, 1294 (M.D. Ala. 1995) (denying summary judgment where employer failed to take prompt remedial action).

## B. The FCRA Claim

The FCRA is "patterned after Title VII." *Harper v. Blockbuster Ent. Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998). This statute bars employers from discriminating against any individual because "race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status." Fla. Stat. § 760.10(1)(a).

Goncalves's FCRA claim rests on three discrete theories: disability, sex, and retaliatory discrimination. She lacks evidence showing she was fired *because* of her sex or disability though. So those theories fail. But her retaliation claim lives since Charter Schools does not meaningfully challenge it. The Court addresses each theory in turn.

### i. Disability Discrimination

A plaintiff bringing an FCRA-disability claim must show: (1) she is disabled; (2) she is a qualified individual; and (3) she "was subjected to unlawful discrimination because of [her] disability." *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255-56 (11th Cir. 2007). Plaintiffs can satisfy this third

prong through either direct or circumstantial evidence. *E.g.*, *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999). The circumstantial route provides two options for proving intentional discrimination: the *McDonnell-Douglas* framework or the "convincing mosaic" approach. *Laughlin v. Miami-Dade Cnty., Fla.*, No. 24-13284, 2025 WL 3633853, at *5 (11th Cir. Dec. 15, 2025).

Both roads lead "to the same destination—the ordinary summary judgment standard*." McCreight v. AuburnBank*, 117 F.4th 1322, 1335 (11th Cir. 2024). And neither is "more forgiving than the other" on the ultimate question of "whether a reasonable jury could infer illegal discrimination." *Id.*; *see also Bogle v. Alabama L. Enf't Agency*, No. 23-13947, 2024 WL 4635025, at *4 (11th Cir. Oct. 31, 2024). So either way, Goncalves needs evidence suggesting that her disability was the real reason she was fired.

Charter Schools contends she has none. The Court agrees. Goncalves offers no similarly situated *non*-disabled employees who enjoyed "systematically better treatment." *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1313 (11th Cir. 2023). She identifies no other disabled employee who was treated unfairly. *See Thomas v. Sheriff of Jefferson Cnty., Alabama*, No. 22-13875, 2023 WL 6534602, at *6 (11th Cir. Oct. 6, 2023) ("When analyzing circumstantial evidence under the convincing mosaic framework, we have considered whether there was animus against non-comparators in the

plaintiff's protected class."). And she has no evidence of "suspicious timing, ambiguous statements," or "other bits and pieces from which an inference of discriminatory intent might be drawn." *Lewis v. City of Union City, Georgia*, 934 F.3d 1169, 1185 (11th Cir. 2019); *cf. McGriff v. Se. Grocers, Inc.*, No. 3:22-CV-691-BJD-MCR, 2023 WL 12172035, at *3 (M.D. Fla. Oct. 20, 2023).

Still, Goncalves contends that intentional discrimination can be inferred since her disability caused her to abandon her job and, in turn, get fired. Specifically, she testified that her disability's symptoms precluded her from keeping contact with Charter Schools or submitting any necessary paperwork to keep her job. It "is well settled that the [FCRA] is not violated when an employer discharges an individual based upon the employee's misconduct, even if the misconduct is related to a disability." *Oliver v. TECO Energy, Inc.*, No. 8:12-CV-2117-T-33TBM, 2013 WL 6836421, at *9 (M.D. Fla. Dec. 26, 2013). So Goncalves needs more to show intentional discrimination. *See Caporicci v. Chipotle Mexican Grill, Inc.*, 189 F. Supp. 3d 1314, 1323 (M.D. Fla. 2016); *J.A.M. v. Nova Se. Univ., Inc.*, 646 F. App'x 921, 926 (11th Cir. 2016) ("Nova is not required to excuse past misconduct, even if that misconduct is linked to a student's mental disability."); *Ray v. Kroger Co.*, 264 F. Supp. 2d 1221, 1228 (S.D. Ga. 2003) ("The law . . . is not violated when an employer discharges an individual based upon the employee's misconduct, even if the misconduct is related to a disability."); *Howard v. Steris Corp.*, 886 F. Supp. 2d 1279, 1299

16

(M.D. Ala. 2012) ("[Plaintiff] reiterates the argument that STERIS fired him for misconduct caused by his disability and that this amounts to discrimination based on his disability. The Court has already rejected this argument and need not address it again.").

At bottom, Goncalves lacks evidence showing that her disability was the real reason for her firing. Such evidence is crucial. That a disabled employee was fired is not ipso facto evidence that the employer engaged in discrimination. And that holds true even where that employee's disability underlies her fireable offense. Goncalves needed evidence reasonably raising the specter she was let go because of her seizures. She's simply got none. So Charter Schools is entitled to summary judgment on this claim. *See Whitehurst v. Liquid Env't Sols., Inc.*, 45 F. Supp. 3d 1328, 1349 (M.D. Fla. 2014)

### ii. Sex Discrimination

Goncalves can establish her FCRA sex-discrimination claim by showing: "(1) she was a member of a protected class; (2) who held a position for which she was qualified; (3) she was fired from that position; and (4) she was replaced by a person outside the protected class or the employer treated similarly situated employees who are not members of the plaintiff's class more favorably." *Boles v. Dist. Bd. of Trs. of Seminole State Coll., Fla.*, No. 617CV2071ORL22DCI, 2018 WL 11476498, at *7 (M.D. Fla. June 27, 2018); *see also Nafziger v. Gospel Crusade, Inc.*, No. 8:19-CV-2511-T-35TGW, 2020

17

WL 10404420, at *4 (M.D. Fla. July 13, 2020); *Wolf v. MWH Constructors, Inc.*, 34 F. Supp. 3d 1213, 1224 (M.D. Fla. 2014). "If a plaintiff cannot identify a similarly situated comparator who was treated more favorably than herself, summary judgment is appropriate where no other evidence of discrimination is present." *Mathis v. City of St. Augustine Beach*, No. 3:13-CV-1015-J-34JRK, 2015 WL 1470762, at *14 (M.D. Fla. Mar. 31, 2015).

Charter Schools argues that Goncalves lacks evidence satisfying the comparator requirement. The Court agrees. Goncalves points to no similarly situated male employees who were treated more favorably. She also offers no evidence showing Charter Schools replaced her with a male teacher. And nothing else indicates she suffered sex discrimination. Because she lacks "evidence sufficient to allow a reasonable fact finder to conclude she can prove a prima facie case of sex discrimination," this claim must stop here. *Wolf*, 34 F. Supp. 3d at 1226; *see also Burrows v. Coll. of Cent. Fla.*, No. 5:14-CV-197-OC-30PRL, 2015 WL 5257135, at *2 (M.D. Fla. Sept. 9, 2015).

### iii. Retaliation

Charter Schools insists that Goncalves's retaliation claim "fails as a matter of law because [she] is barred from asserting one due to [her] failure to exhaust administrative remedies." (Doc. 50 at 24.) And that is where the school's analysis begins and ends. It offers not a single word explaining why the charge-of-discrimination form Goncalves attached to her complaint (Doc.

35-1) falls short. The Court will not pick up counsel's slack by filling in the blanks. When a party tosses a skeletal, one-sentence assertion into a brief and leaves the court to put flesh on its bones, the argument is waived. *See Burce v. Experian Info. Sols., Inc.,* No. 0:24-61681-CIV, 2025 WL 3715843, at \*4 (S.D. Fla. Dec. 9, 2025); *Shi v. Individuals, Partnerships & Unincorporated Associations Identified on Schedule "A",* No. 25-21509-WPD, 2025 WL 2840694, at \*3 (S.D. Fla. Aug. 14, 2025).

Charter Schools tries one other shortcut. It cites "D.E. 28, 34, and 38" to incorporate by reference its earlier exhaustion argument made back at the motion-to-dismiss stage. But we are now at summary judgment, where the record matters. And in any event, Local Rule 3.01(i) bars parties from "incorporat[ing] by reference all of or any other motion, legal memorandum, or brief." Since Charter Schools doesn't meaningfully challenge it, the FCRA-retaliation claim lives on. *Prudential Ins. Co. of Am. v. Gardina,* 759 F. Supp. 3d 1230, 1247 (M.D. Fla. 2024).

### C. The Negligence Claims

That leaves the two negligence claims. Goncalves's first theory is simple enough: Charter Schools breached its "duty to provide and maintain a safe and respectful work environment free of discrimination and harassment for all its employees." (Doc. 35 ¶¶ 65-66.) The other alleges that Charter Schools

negligently retained Maldonado since it "became aware, or should have become aware, of . . . his unfitness." (*Id.* ¶¶ 68-73.)

Because Florida "does not recognize a common law cause of action for negligent failure to maintain a workplace free of sexual harassment," both counts fail as a matter of law. *Castleberry v. Edward M. Chadbourne, Inc.*, 810 So. 2d 1028, 1030 (Fla. Dist. Ct. App. 2002); *see also Jackman v. 20th Jud. Cir. Ct. Admin.*, No. 219CV828FTM38MRM, 2020 WL 3895425, at *4 (M.D. Fla. July 10, 2020); *Santarsiero v. Martin*, No. 220CV00435FTM29NPM, 2020 WL 7425257, at *5 (M.D. Fla. Dec. 18, 2020) ("There is no common law claim of harassment as an independent tort under Florida law."); *Merrick v. Radisson Hotels Int'l, Inc.*, No. 8:06CV01591 T24TGW, 2007 WL 1576361, at *5 (M.D. Fla. May 30, 2007) (dismissing negligent retention and supervision claims based solely on sexual harassment since "Florida law does not recognize a common law cause of action based on the negligent failure to maintain a workplace that is free of sexual harassment"). So summary judgment is appropriate on both claims. *See Wheeler v. Blackbear Two, LLC*, No. 6:12-CV-583-ORL-37, 2012 WL 3596128, at *2 (M.D. Fla. Aug. 21, 2012) (dismissing claims stemming from supervisors' and employees' harassment "[b]ecause Plaintiff fail[ed] to allege an injury resulting from tort which is recognized under common law"); *Smith v. Am. Online, Inc.*, 499 F. Supp. 2d 1251, 1267 (M.D. Fla. 2007) (same).

## IV. Conclusion

In sum, Goncalves has shown enough to take her Title VII claim to a jury. The record leaves too many open questions about the pervasiveness of the harassment and the adequacy of the school's response. Her FCRA-retaliation claim survives alongside it, mostly because Charter Schools never really bothered to make the case for dismissing it. But Goncalves's disability and sex discrimination claims fail since she lacks evidence showing intentional discrimination. And her negligence claims are done since they do not exist under Florida common law. Charter Schools' Motion for Summary Judgment (Doc. 50) is therefore **GRANTED in part** and **DENIED in part**.

**ORDERED** in Fort Myers, Florida on February 27, 2026.

Kyle C. Dudek
United States District Judge